**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0006277
12-JAN-2017
08:11 AM**

NO. CAAP-13-0006277

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS
SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP,
Plaintiff-Appellee,
v.
JOHN EDWARD ANDERSON, III, ASSOCIATION OF APARTMENT OWNERS OF
KIPAPA ESTATES, COUNTY OF KAUAI; UNITED STATES OF AMERICA, JOHN
DOES, et. al., Defendants-Appellants

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 12-1-0359)

MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Reifurth and Ginoza, JJ.)

Defendant-Appellant John Edward Anderson, III
(**Anderson**) appeals from the Judgment, filed on November 29, 2013,
in the Circuit Court of the Fifth Circuit (**circuit court**).[1]
Anderson challenges the circuit court's "Findings of Fact,
Conclusions of Law, Order Granting Plaintiff's Motion for Summary
Judgment Against All Parties and for Interlocutory Decree of
Foreclosure Filed June 12, 2013" (**FOF/COL/Order**) in which the
circuit court granted summary judgment and a decree of
foreclosure in favor of Plaintiff-Appellee Bank of America, N.A.,
Successor by Merger to BAC Home Loans Servicing, LP fka
Countrywide Home Loans Servicing LP (**BANA**).

---

[1]  The Honorable Randal G.B. Valenciano presided.

On appeal, Anderson contends that the circuit court erred in granting summary judgment in favor of BANA because: (a) BANA relied on inadmissible evidence; (b) BANA failed to establish its legal standing to enforce the terms of the Note; and (c) the circuit court should have granted Anderson's request for a continuance to seek discovery.

For the reasons discussed below, we affirm.

## I. Background

This case involves a property located at 6631 Kipapa Road, Unit A, Kapaa, HI 96746 (**Property**). On December 19, 2012, BANA filed a Complaint For Foreclosure[2] alleging that Anderson was in default under a Note and Mortgage and that there was due a "principal balance of $384,785.94 as well as interest, late charges and other advances secured by the Note and Mortgage, for a total debt owed of $397,162.59." BANA sought a sale by foreclosure and a deficiency judgment for any amount owed after the sale of the Property.

On June 12, 2013, BANA filed a motion for summary judgment and attached a "Declaration of Indebtedness" executed by Cynthia Hackimer (**Hackimer**), an Assistant Vice-President of BANA. Hackimer attested that Anderson "defaulted in the performance of the terms set forth in the Note and Mortgage by failing to pay the principal, interest and advances[.]" Hackimer further attested that true and correct copies of the promissory note (**Note**), Mortgage, Assignment of Mortgage, Notice of Intent to Accelerate, and Account Information Statement were attached to her Declaration. The Note included an endorsement from the original lender, U.S. Financial Mortgage Corporation, a Hawaii Corporation (**U.S. Financial**) to Countrywide Bank, FSB (**Countrywide**), and an endorsement by Countrywide in blank.

---

[2] In addition to Anderson, the Complaint named several other defendants who either disclaimed an interest in this matter, indicated no opposition to BANA's summary judgment motion, or did not appeal. Thus, Anderson is the only appellant in this appeal.

2

Hackimer's declaration attests that "[BANA] directly or through an agent, has possession of the promissory note."

Based on the documents submitted by BANA in support of its summary judgment motion, Anderson executed the Note dated October 19, 2007, which states that in return for a loan he had received, he promised to pay U.S. Financial the amount of $385,000.00. The Note was secured by a Mortgage on the Property. Mortgage Electronic Registration Systems, Inc. (**MERS**) was listed in the Mortgage as "mortgagee" and "nominee." The Mortgage was recorded with the State of Hawai'i Bureau of Conveyances on November 8, 2007.

BANA's documents further indicated that, on September 12, 2011, BANA sent a Notice of Intent to Accelerate to Anderson. The notice stated that "[BANA] services the home loan described above on behalf of the holder of the promissory note (the "Noteholder"). The loan is in serious default because the required payments have not been made." The notice stated that in order for Anderson to cure the default, "on or before October 12, 2011, [BANA] must receive the amount of $3,658.76 plus any additional regular monthly payment or payments, late charges, fees and charges[.]" BANA's documents further indicate that on January 30, 2012, MERS as nominee for U.S. Financial executed an Assignment of Mortgage, which assigned the mortgage to BANA. The Assignment of Mortgage was recorded with the State of Hawai'i Bureau of Conveyances on February 8, 2012.

Anderson filed an opposition to BANA's summary judgment motion on July 15, 2013, arguing that certain exhibits and certain parts of Hackimer's declaration are inadmissible, that without the inadmissible evidence summary judgment is not proper, and seeking additional time to allow Anderson to conduct discovery.

On July 23, 2013, the circuit court held a hearing on BANA's summary judgment motion. Subsequently, on November 29, 2013, the circuit court entered its FOF/COL/Order granting summary judgment for BANA and concluding that a total of

3

$400,329.84 was due to BANA under the Note and Mortgage. Also on November 29, 2013, the circuit court entered a Judgment based on the FOF/COL/Order and pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b).

On December 30, 2013, Anderson timely filed a Notice of Appeal.

## II. Discussion

Anderson contends that the circuit court erred when it granted BANA's summary judgment motion because BANA relied on inadmissible evidence, and even considering BANA's evidence, it did not establish that BANA was the owner of the original note and that the Notice of Intent to Accelerate was issued by a proper party. We review Anderson's challenge to the circuit court's summary judgment ruling de novo. See Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawai'i 286, 295-96, 141 P.3d 459, 468-69 (2006).

Anderson also contends the circuit court should have granted his request for a continuance under HRCP Rule 56(f). We review this issue for abuse of discretion. Josue v. Isuzu Motors America, Inc., 87 Hawai'i 413, 416, 958 P.2d 535, 538 (1998)("A trial court's decision to deny a request for a continuance pursuant to HRCP Rule 56(f) will not be reversed absent an abuse of discretion.").

### A. Summary Judgment Ruling

A foreclosure decree is appropriate only when the following are established: (1) the existence of the agreement, (2) the terms of the agreement, (3) default under the terms of the agreement, and (4) notice of default was provided. IndyMac Bank v. Miguel, 117 Hawai'i 506, 520, 184 P.3d 821, 835 (App. 2008) (citing Bank of Honolulu, N.A. v. Anderson, 3 Haw. App. 545, 551, 654 P.2d 1370, 1375 (1982)).

We start with Anderson's contention that BANA relies on inadmissible evidence. In particular, Anderson asserts that Hackimer, a BANA Assistant Vice-President, submitted a declaration containing inadmissible hearsay because she is not

4

competent to testify regarding records created and maintained by companies *other than* BANA. In this regard, however, we must first note that Anderson does not appear to challenge the admissibility of the subject Note, the Mortgage, or the Assignment of Mortgage. Indeed, in the circuit court, in his opposition to BANA's summary judgment motion, Anderson never raised a challenge to the admissibility of the Note (exhibit "A"), or the *certified copies* of the Mortgage and Assignment of Mortgage (exhibits "H" and "I") that were attached to BANA's summary judgment motion. Thus, even assuming Anderson were now challenging the admissibility of those documents, his argument would be deemed waived. Price v. AIG Hawai'i Ins. Co., Inc., 107 Hawai'i 106, 111-12, 111 P.3d 1, 6-7 (2005)(holding that an appellant's failure to challenge the admissibility of documents related to a summary judgment motion in the trial court waived the issue on appeal).

Further, as to the other documents that appear to be relevant to BANA's summary judgment motion -- the Notice of Intent to Accelerate (exhibit "D") and the Account Information Statement (exhibit "E") -- they are BANA records and do not appear to have been created by another entity. Thus, Hackimer's declaration properly establishes that they are admissible as BANA records under Hawaii Rules of Evidence (**HRE**) Rule 803(b)(6), records of regularly conducted activity.

HRE Rule 803(b)(6) states the following relevant hearsay exception:

> *Records of Regularly Conducted Activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made in the course of a regularly conducted activity, at or near the time of the acts, events, conditions, opinions, or diagnoses, as shown by the testimony of the custodian or other qualified witness, or by certification that complies with rule 902(11) or a statute permitting certification, unless the sources of information or other circumstances indicate lack of trustworthiness.

5

Under HRE Rule 803(b)(6), "[t]he proponent must establish (1) that the record evidences acts, events, conditions, opinions, or diagnoses; (2) that the record was made in the course of a regularly conducted activity; and (3) that the record was made at or near the time of the acts or events that are recorded." State v. Fitzwater, 122 Hawai'i 354, 365, 227 P.3d 520, 531 (2010)(citations and internal quotation marks omitted).

The foundation may be established "by the testimony of the custodian or other qualified witness, or by certification that complies with rule 902(11) or a statute permitting certification[.]" Id. (citation and footnote omitted). "A person can be a 'qualified witness' who can authenticate a document as a record of regularly conducted activity under HRE Rule 803(b)(6) or its federal counterpart even if he or she is not an employee of the business that created the document, or has no direct, personal knowledge of how the document was created." Id. at 366, 227 P.3d at 532 (footnote omitted). "The witness need only have enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business. The witness need not have personal knowledge of the actual creation of the documents or have personally assembled the records." Id. (quoting 5 Joseph McLaughlin, Weinstein's Federal Evidence § 803.08[8][a] (2d ed. 2009)).

Here, to lay the foundation for the business records exception, Hackimer attested to the following in her declaration:

> 1. I am authorized to sign this Declaration on behalf of Plaintiff [BANA] as an officer of BANA.
> 2. BANA maintains records for the Loan. As part of my job responsibilities for BANA, I am familiar with the type of records maintained by BANA in connection with the Loan.
> 3. The information in this Declaration is taken from BANA's business records. I have personal knowledge of BANA's procedures for creating these records. They are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of BANA's regularly conducted business activities; and (c) created by BANA as a regular practice.

(Emphasis added.)  Hackimer, as a qualified witness, laid a sufficient foundation under HRE Rule 803(b)(6) for the Notice of Intent to Accelerate (exhibit "D") and the Account Information Statement (exhibit "E").

Anderson contends that Hackimer's declaration "contains no reference from whom [BANA] obtained the right to notify Anderson of its 'intent to accelerate' or when [BANA] obtained such a right[.]"  However, the Notice of Intent to Accelerate states specifically that "[BANA] services the home loan described above on behalf of the holder of the promissory note."  Anderson does not contest that he was in default, nor does he cite any authority for the proposition that BANA must establish who authorized it to provide the notice.  Thus, the Notice of Intent to Accelerate satisfies the requirement that Anderson was put on notice of his default.

Anderson also argues that Hackimer's declaration is deficient because it does not state that BANA is in possession of the original note and states that BANA is in possession of the note "directly or through an agent."  While we cannot say that Hackimer's declaration is a model of clarity that should be followed, we deem it sufficient under the circumstances of this case.  Hackimer's declaration, made under penalty of perjury, attests that BANA has "possession of the promissory note[,]" that "[t]he promissory note has been duly indorsed[,]" and that "[a] true and correct copy of the Note is attached as Exhibit A." The attached Note states that "I understand that the Lender [U.S. Financial] may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"  Moreover, the Note is: (1) endorsed by U.S. Financial payable to Countrywide Bank, FSB; and (2) endorsed by Countrywide Bank, FSB in blank.

"In order to enforce a note and mortgage under Hawaii law, a creditor must be 'a person entitled to enforce' the note. One person entitled to enforce an instrument is a 'holder' of the

7

instrument. A 'holder' is the 'person in possession of a negotiable instrument.'" In re Tyrell, 528 B.R. 790, 794 (Bankr. D. Haw. 2015)(citing Hawaii Revised Statutes (**HRS**) § 490:3-301 (2008) and HRS § 490:1-201(b) (2008))(footnotes omitted).[3]

"An instrument payable to an identified person may become payable to bearer if it is indorsed in blank pursuant to section 490:3-205(b)." HRS § 490:3-109(c) (2008). "If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." HRS § 490:3-205(b) (2008)[4]; HRS § 490:3-201(b).

---

[3] HRS § 490:1-201(b) states in relevant part:

"Holder" means:

(1) The person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession;

(2) The person in possession of a negotiable tangible document of title if the goods are deliverable either to bearer or to the order of the person in possession; or

(3) The person in control of a negotiable electronic document of title.

HRS § 490:3-301 provides:

**§490:3-301 Person entitled to enforce instrument.** "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 490:3-309 or 490:3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

[4] HRS §490:3-205 states in relevant part:

**§490:3-205 Special indorsement; blank indorsement; anomalous indorsement.** (a) If an indorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the indorsement identifies a person to whom it makes the instrument payable, it is a "special indorsement". When specially indorsed, an instrument becomes payable

(continued...)

This court has recognized that "a trial court does not err in finding that a plaintiff is the holder of a note when the plaintiff bears the note, a blank endorsement establishes that the plaintiff is the holder of the note, and there is a declaration stating that the note is a true and accurate copy of the note in the plaintiff's possession." Wells Fargo, N.A. v. Pasion, No. CAAP-12-0000657, 2015 WL 4067259, at *3 (Haw. App. June 30, 2015) (SDO), cert. denied, 2015 WL 5965835 (Haw. Oct. 13, 2015). Although it would be preferable that Hackimer's declaration state explicitly that BANA possesses the "original" note, we deem the evidence in total sufficient in this case to establish that point.

Moreover, we do not believe it is fatal to BANA's summary judgment motion that Hackimer attests that BANA possesses the Note "directly or through an agent." HRS § 490:3-201 addresses the "negotiation" of an instrument and states in relevant part: "If an instrument is payable to bearer, it may be negotiated by transfer of possession alone." HRS § 490:3-201(b). The language of HRS § 490:3-201 is taken from the Uniform Commercial Code (**UCC**) and the comments to the UCC for the related provision states in relevant part:

> A person can become holder of an instrument when the instrument is issued to that person, or the status of holder can arise as the result of an event that occurs after issuance. "Negotiation" is the term used in Article 3 to describe this post-issuance event. Normally, negotiation occurs as the result of a voluntary transfer of possession of an instrument by a holder to another person who becomes the holder as a result of the transfer. Negotiation always requires a change in possession of the instrument because nobody can be a holder without possessing the instrument, either directly or through an agent.

---

[4] (...continued)
to the identified person and may be negotiated only by the indorsement of that person . . .
(b)   If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement". When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.

(Emphasis added.)  <u>See also</u> <u>U.S. Bank National Assoc. v. Gray</u>, No. 12AP-953, 2013 WL 3963471, at *5 (Ohio Ct. App. July 30, 2013)(holding that the foreclosing party was a holder of a note where its agent was in possession of the note).  Thus, BANA's assertion that it possesses the Note "directly or through an agent" is sufficient to establish its right to enforce the Note.

BANA satisfied its initial burden and the burden shifted to Anderson to show there were genuine issues of material fact precluding summary judgment.  Anderson's opposition did not raise any genuine issues of material fact.  The circuit court thus did not err in granting summary judgment in favor of BANA.

**B.  Anderson's Request for Time to Conduct Discovery**

Anderson argues that the circuit court abused its discretion when it denied his request for a continuance to conduct discovery.  BANA responds that Anderson failed to show how discovery would "rebut [BANA]'s showing of absence of a genuine issue of fact."

A request for a continuance "must demonstrate how postponement of a ruling on the motion will enable the moving party, by discovery or other means, to rebut the movant's showing of absence of a genuine issue of fact."  <u>U.S. Bank Nat'l Ass'n v. Salvacion</u>, 134 Hawaiʻi 170, 176, 338 P.3d 1185, 1191 (App. 2014) (citation omitted).

> Rule 56(f) allows a party to request a delay in granting summary judgment if the party can make a good faith showing that postponement of the ruling would enable it to discover additional evidence which might rebut the movant's showing of the absence of a genuine issue of material fact. The party is required to show what specific facts further discovery might unveil.

<u>Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co.</u>, 116 Hawaiʻi 277, 308, 172 P.3d 1021, 1052 (2007)(quoting <u>McCabe v. Macaulay</u>, 450 F. Supp. 2d 928, 933 (N.D. Iowa 2006)).

Anderson contends that "[BANA] had presented no admissible evidence that it was even in possession of the original note and thus could not verify if they even had standing to enforce its terms[.]"  Given our determination that BANA

sufficiently established that it was the holder of the Note, the circuit court did not abuse its discretion in denying Anderson's request for a continuance.

### III. Conclusion

Based on the above, the Judgment filed on November 29, 2013, in the Circuit Court of the Fifth Circuit is affirmed.

DATED:  Honolulu, Hawaiʻi, January 12, 2017.

On the briefs:

Joe P. Moss,
for Defendant-Appellant
John Edward Anderson, III.

Charles R. Prather,
for Plaintiff-Appellee,

Presiding Judge

Associate Judge

Associate Judge

11